**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **SAMUEL J. SECRETI, on behalf of himself and all those similarly situated,** | ) ) ) ) | **Case No. 3:13-cv-1065** |
| | ) | **Judge Campbell** |
| | ) | **Magistrate Judge Griffin** |
| **Plaintiff/Counter-Defendant,** | ) | |
| | ) | |
| **v.** | ) | **CLASS ACTION** |
| | ) | |
| **PTS OF AMERICA, LLC, and DOES 1 through 100,** | ) ) ) | |
| | ) | |
| **Defendants/Counter-Plaintiff.** | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR CLASS CERTIFICATION**

# I. INTRODUCTION

Plaintiff/Counter-Defendant Samuel J. Secreti ("Secreti" or "Plaintiff") has moved the Court for an order appointing him as class representative and allowing this case to proceed as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) on behalf of the following class (the "Class"):

> All inmates including, without limitation, adults and juveniles, males and females, pretrial detainees, sentenced prisoners, state mental hospital inmates, and immigration detainees who were transported by PTS OF AMERICA, LLC and/or its agents and employees on behalf of local or state governments, or the federal government, since September 30, 2012 restrained for more than 48 continuous hours.

This action easily satisfies all of the prerequisites for certification of a class. The Class is sufficiently numerous to make joinder impracticable, there are questions of law and fact common to the Class, the claims and defenses of Plaintiff are typical of the Class, and Plaintiff will fairly and adequately protect the interest of the Class. Fed. R. Civ. P. 23(a). In addition, the action is maintainable as a class action under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Class predominate over any issues affecting individual class members and the proposed class action is clearly superior to other methods for adjudicating Class members' claims. Additionally, pursuant to Fed. R. Civ. P. 23(g)(1), Plaintiff requests that Barrett Johnston Martin & Garrison, LLC ("Barrett Johnston"), which has extensive experience handling complex class action litigation, be appointed class counsel.

Accordingly, Plaintiff's motion for an Order certifying the Class, appointing him as the class representative and appointing Barrett Johnston as Class Counsel should therefore be granted.

1

## II.     FACTUAL BACKGROUND

This is class action for money damages against PTS OF AMERICA, LLC ("PTS") and DOES 1 through 100 (persons sued herein by their fictitious names) (collectively, "Defendants") for violations of Plaintiff and other Class members' constitutional rights. ¶ 1.[1]  Plaintiff and the Class are inmates who were transported by PTS on behalf of local or state governments, or the federal government. Plaintiff alleges that PTS used excessive force against him and caused him to experience the unnecessary and wanton infliction of pain. Plaintiff was a pre-trial detainee who was acquitted at trial and is no longer incarcerated.  *Id.*

As a background, according to its website PTS "is the nation's largest prisoner extradition company and one of the largest international transporters of detainees . . . [and it] transports over 100,000 detainees per year." ¶ 3.  As a for-profit company, PTS' website makes it clear their primary goal is the satisfaction of their clients – not the detainees they transport.  *Id.* For example, they boast: "The key to success in business is maintaining a high level of customer satisfaction and loyalty" and "[a]s one of the very few nationwide prisoner transport operators in the United States, we have efficiencies in routes that we are able to pass on to you. We can move your prisoner at less cost than if you did it yourself."  *Id.*  The inmates transported by PTS include adults and juveniles, males and females, pretrial detainees, sentenced prisoners, state mental hospital inmates, and immigration detainees.  ¶ 13. It is PTS's policy and practice to restrain them, regardless of their security classification, in handcuffs, waist or "belly" chains, leg irons, interconnects, and/or black boxes.  *Id.*  Indeed, Defendants admit "PTS utilizes handcuffs, leg cuffs and waist chains . . . [and] Black boxes . . ." *See* Ex. A at p.7 (Defendants' Responses to

---

[1]     All "¶" or "¶¶" references refer to a paragraph in Plaintiff's First Amended Class Action Complaint ("Amended Complaint") filed on October 21, 2014.  Dkt. No. 42.

Plaintiff's First Set of Interrogatories, Response No. 6). Black boxes are utilized on a case by case basis. Belly chains keep the inmates' handcuffs at waist level. Black boxes, placed over the link between the handcuffs, restrict wrist movement. Interconnects are two foot chains that chain inmates together. ¶ 13. It is PTS's policy and practice that inmates' restraints may not be removed while the inmate is in transit. *Id.*

PTS's transport vehicles or "transporters" are compartmentalized. ¶ 14. It is PTS's policy and practice that inmates will remain on the vehicle, in their compartments, in restraints, from the time they are picked up until the time they are dropped off. *Id.* PTS has no written or unwritten policy stating the maximum number of hours an inmate can be transported. *Id.* Most of PTS's transport vehicles do not have chemical or other toilets on board. ¶ 15. Inmates are allowed to use the toilet only when the vehicle is stopped and they are escorted by a guard. Inmates remain in their restraints, including connector chains during use of the toilet. *Id.* The connector chain requires that the inmate to whom an inmate is chained accompany him or her to the toilet and can prevent the door to the toilet from closing. *Id.* PTS has no policy promoting inmate hygiene during transport. ¶ 16. There is no running water. Prisoners are not allowed to wash, brush their teeth, shave, or change their clothes. PTS has no nutritional guidelines for prisoners. *Id.* All of a prisoner's meals are comprised of fast food during transport. *Id.*

Prior to his transport, Plaintiff was presented with a document and was instructed he needed to sign it so the jail could release him into the custody of PTS and he could begin his trip to Pennsylvania. ¶¶ 4, 17. Plaintiff objected to the document because it did not contain a complete list of all the medications he needed. *Id.* Nevertheless, and under duress, Plaintiff signed the document because he was ordered to do so by agents of PTS pursuant to their policy and general practice of forcing transportees to sign these unenforceable, adhesive and

3

unconscionable documents in violation of public policy in an attempt to avoid liability for medical conditions and/or medications prescribed therein. Indeed, Plaintiff was told by agents of PTS, "he must sign it." *Id.*

Thereafter, on or about 7:30 am on October 12, 2012, Plaintiff was taken into the care, custody and control of Defendants PTS and Does 1 and 2 at a facility in Haysi, Virginia. ¶ 18. Plaintiff was to be transported to Uniontown, PA, a distance of approximately 320 miles, less than a six hour drive. *Id.* Instead, Defendants transported Plaintiff to Abingdon, Virginia, then into Tennessee, made two stops in North Carolina; then to Maryland; Lancaster, PA; Delaware, New Jersey, upstate New York nearly to the Canadian border, finally arriving in Scranton, Pennsylvania, at about 7:30 pm on Sunday October 14, 2012. ¶ 19. Altogether, Plaintiff had been handcuffed and shackled in the transport vehicle for 60 continuous hours. *Id.*

At 8:00 am the next morning, Monday October 15, 2012, Plaintiff and the other inmates were reloaded into PTS' transport vehicle. ¶ 20. They made several stops in Pennsylvania, including Harrisburg, which is about 185 miles, or 3 hours, from Uniontown, before traveling east to Rhode Island. There at approximately 11:30pm, Plaintiff and the other inmates were allowed to get out of the vehicle for a break. *Id.* They then proceeded back to Pennsylvania, then into Ohio making stops in Cleveland, Lisbon and Zanesville, before finally getting to Plaintiff's destination in Uniontown, Pennsylvania at about 9:45pm, Tuesday, October 16, 2012. *Id.* At the time of his incarceration and when he was in the care, custody, and control of Defendants, Plaintiff had been prescribed various medications, including amitriptyline, an antidepressant, prednisone for treatment of gout, and atenolol for high blood pressure. ¶ 21. Despite the fact that Defendants knew that Plaintiff had been prescribed these medications and also knew that the trip for Plaintiff would last five days, Defendants brought only enough amitriptyline for two days and

secured none of the Plaintiff's other medications at all. *Id.* At one point during Plaintiff's marathon transport, Does 1 and/or 2 discovered a leak in one of the transport vehicles' tires. ¶ 22. The agent called road-side assistance. *Id.* A flat bed tow truck arrived and lifted the van with Plaintiff and the other inmates still in it to fix the tire. *Id.* Because the tire could not be fixed on site, the transporter vehicle was pulled onto the back of the tow truck, with all inmates still in it, and to a garage. *Id.* There, the vehicle was raised on a lift, still with all the shackled inmates in it, while the tire was repaired or replaced. *Id.* Throughout the trip, the restraints caused Plaintiff physical and emotional pain, which became progressively worse. ¶ 23. He was not allowed to lie down. *Id.* Sitting up, he was only able to sleep for a short time. *Id.* His handcuffs were too tight and his hands became swollen. Likewise, the leg shackles caused Plaintiff's legs to swell. *Id.* They refused to give him bathroom breaks when he needed them. Plaintiff was not allowed to stand or to stretch.

There was no penological necessity for Defendant PTS to transport inmates in these inhumane conditions. ¶ 24. Had PTS transported inmates reasonably directly from their pick up to their drop off locations they would have arrived in significantly less time. *Id.* Moreover, on information and belief, PTS contracts with numerous detention facilities, and there are others as well that are available to house PTS inmates overnight and provide them with the opportunity to stretch, free of restraints, to lie down, and to attend to personal hygiene. *Id.*

As a result of PTS's policies, practices, or customs described herein, Plaintiff, and all those similarly situated, have suffered physical, mental, and emotional injuries, invasion of privacy, and violation of federal and state statutory and constitutional rights. Plaintiff, and all those similarly situated, are entitled to recover damages according to proof, including exemplary damages. ¶¶ 6, 25.

5

## III.    COURTS ROUTINELY CERTIFY CASES EXACTLY LIKE THIS ONE

This case, which involves the transport of prisoners, detainees or inmates in violation of their constitutional rights, easily satisfies the requirements for class certification. First, as a general proposition, "[c]lass actions under Rule 23 of the Federal Rules of Civil Procedure have been a useful tool in prison litigation . . . [and] in general the federal courts have been hospitable to such claims" 22 AM. JUR. TRIALS 1 (Originally published in 1975). *See also In re Jackson Lockdown/MCO Cases*, 107 F.R.D. 703, 707 (E.D. Mich. 1985) ("'The courts have generally recognized that the class action may be desirable as a method of obviating the vast numbers of actions that prisoners can generate on the same or similar issues.'").[2] In fact, as one court in this Circuit noted in a similar case asserting unconstitutional violations by former prisoners concerning a county jail's strip-search policy, "[o]bviously, the Defendants . . . believed that handling all these claims in one class action was superior to all other methods of adjudication or else they would not have agreed to the definition of the class.." *Sutton v. Hopkins Cnty., Ky*., CIV.A. 403CV003-M, 2005 WL, at *5 (W.D. Ky. Dec. 19, 2005).

Indeed, in prisoner, detainees or inmate cases asserting constitutional violations such as this case that involve a uniform policy or practice employed by the defendant, federal courts in this Circuit and across the country have not just been hospitable, they have routinely found that these cases by their very nature satisfy the predominance standard, and as a result, have uniformly granted class certification in cases exactly like this case. *See, e.g., In re Nassau Cnty. Strip Search Cases,* 461 F.3d 219, 227 (2d Cir. 2006) (Common issues predominated over individual issues as to liability in an action challenging the constitutionality of the county correctional center's blanket policy, practice and custom of strip-searching newly admitted,

---

[2]    Here, as elsewhere, citations have been omitted and emphasis has been added, unless otherwise noted.

misdemeanor detainees); *Flood v. Dominguez*, 270 F.R.D. 413, 421 (N.D. Ind. 2010) (certifying class of detainees held for over 24 hours without a bed and holding common issues predominated as a result of uniform policy or custom at county jail); *Tyler v. Suffolk County*, 253 F.R.D. 8, 11 (D. Mass. 2008) (certifying a class of inmates at a state prison who alleged that the conditions of their confinement violated the Eighth Amendment because they were denied free access to toilet facilities and finding predominance met because "a 'sufficient constellation' of common questions predominates and justifies certification of this class."); *Blihovde v. St. Croix Cnty., Wis.*, 219 F.R.D. 607, 620 (W.D. Wis. 2003) ("[T]he case law suggests that when the class is challenging a uniform policy, the validity of that policy predominates over individual issues and class certification is appropriate."); *Allen v. Leis*, 204 F.R.D. 401, 410 (S.D. Ohio 2001) ("common questions of law and fact prevail" in case where detainees' funds were confiscated before conviction); *Mack v. Suffolk Cnty.*, 191 F.R.D. 16, 24 (D. Mass. 2000) (certifying class where all female pre-arraignment detainees were subject to strip-search policy and finding common questions predominated because each class member was "subjected to the very same conduct, an unconstitutional strip-search."); *Brown v. City of Detroit*, 10-12162, 2012 WL 4470433, at *13 (E.D. Mich. Sept. 27, 2012) ("In this case, because Defendant has a uniform policy of not providing bedding, evaluating what Defendant's purpose is and whether the deprivation is excessive in relation to that purpose is subject to generalized proof."); *Young v. County of Cook*, No. 06 C 552, 2007 WL 1238920, at *7 (N.D. Ill. Apr. 25, 2007) ("When a class challenges a uniform policy or practice, the validity of that policy or practice tends to be the predominant issue in the ensuing litigation."); *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 02 CV 00605, 2005 WL 2033696, at *13 (S.D. Ohio Aug. 23, 2005) ("[T]he Hamilton County Public Defender's policy of not asking for an indigency hearing is common to the class as a

7

whole. When weighed, on balance, the Court concludes that this issue predominates over any individual issues which might arise.").

This case is no different as it involves the uniform policy, procedure and practice of Defendants transporting prisoners, detainees and inmates in violation of their constitutional rights. Therefore, Plaintiff respectfully request this Court follow the lead of courts across the Country and certify the Class.

## III.    STANDARDS GOVERNING CLASS CERTIFICATION

"The principal purpose of class actions is to achieve efficiency and economy of litigation, with respect to both the parties and the courts." *City of Goodlettsville v. Priceline.com, Inc.*, 267 F.R.D. 523, 528 (M.D. Tenn. 2010) (citing *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 159, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)). As this Court recently explained:

> Class actions "vindicat[e] the rights of individuals who otherwise ought not consider it worth the candle to embark on litigation in which the optimum result might be more than consumed by the cost.'" A class action concentrates the litigation in one forum and avoids inconsistent adjudications, thereby advancing "the efficiency and economy of litigation which is a principal purpose of the procedure."

*Garden City Employees' Ret. Sys. v. Cent. States, Se. & Sw. Areas Pension Fund*, 3:09-00882, 2012 WL 1071281, at *33 (M.D. Tenn. Mar. 29, 2012); *Schuh v. HCA Holdings, Inc.*, 3:11-01033, 2014 WL 4716231, at *14 (M.D. Tenn. Sept. 22, 2014) ("'The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.'").

"Given the importance of judicial efficiency in this process, Rule 23 confers 'substantial discretion' on the trial court to decide whether to certify and how to manage a proposed class." *Noel v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, No. 3:11-CV-519, 2012 WL 6676770, at *1 (M.D. Tenn. Dec. 21, 2012); *See also Priceline.com*, 267 F.R.D. at 528 ("A

8

district court has broad discretion in deciding whether to certify a class, although it must exercise that discretion within the framework of Rule 23.").

To fulfill the requirements for class certification, Plaintiff must meet the two-prong requirements of Rule 23. First, Plaintiff must show that the prerequisites under Rule 23(a), which applies to all class actions, are satisfied. Once Plaintiff has met this requirement, he must show that this action is maintainable as a class action under one of the subdivisions of Rule 23(b). Fed. R. Civ. P. 23(b); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 621, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

As this Court recently noted, in determining whether class certification is appropriate, "while a court may generally accept a complaint's allegations as true, it may sometimes need to 'probe behind the pleadings' before deciding the certification issue." *Christy v. Heritage Bank*, 3:10-CV-0874, 2013 WL 6858008, at *2 (M.D. Tenn. Nov. 8, 2013); *HCA*, 2014 WL 4716231, at *4 (same). However, even where "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question[,]" *Falcon*, 457 U.S. at 160, "'the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.'" *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Thus, while the "court must engage in a rigorous analysis of the class certification motion, . . . given the Supreme Court's warning in *Eisen*, at this point, the Court's duty is to determine ***only*** if there is a sufficient factual showing to support the class sought to be certified." *Garden City*, 2012 WL 1071281, at *33.

## IV. ARGUMENT

### A. The Proposed Class Satisfies the Prerequisites of Rule 23(a)

The four prerequisites to class certification are easily satisfied in this case. The general criteria for certification of a class are set forth in Rule 23(a):

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Each of these prerequisites is met here.

### 1. The Proposed Class Is So Numerous That Joinder Is Impracticable

Rule 23(a)(1) requires that the class be so numerous that joinder of all its members is impracticable. There is no strict test used to determine whether a class is sufficiently numerous to make joinder impracticable. *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996); *Senter v. General Motors Corp.*, 532 F.2d 511, 523 n. 24 (6th Cir. 1976). Instead, "courts must 'examine the specific facts of each case.'" *In re Direct Gen. Corp. Secs. Litig.*, No. 3:05-0077, 2006 WL 2265472, at *2 (M.D. Tenn. Aug. 8, 2006). "When class size reaches substantial proportions, . . . the impracticability requirement is usually satisfied by the numbers alone." *Am. Med.*, 75 F.3d at 1079.

As this Court has recognized, "[a]ccording to *Newberg's* often-cited treatise, 'the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable, ***and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone***.'" *Priceline,* 267 F.R.D. at 529. *See also Peters v. Cars To Go, Inc.*, 184 F.R.D. 270, 276 (W.D. Mich. 1998) ("A class numbering more than 40 members usually satisfies the impracticability requirement . . . and classes containing 100 or more

10

members routinely satisfy the numerosity requirement . . .").  Indeed, "[w]hile no specific number is determinative, several courts have certified classes that involved substantially smaller classes of one hundred members or less."  *Gooch v. Life Investors Ins. Co. of Am.*, 264 F.R.D. 340, 347 (M.D. Tenn. 2009) *vacated in part, appeal dismissed in part*, 672 F.3d 402 (6th Cir. 2012).

As noted above, PTS is the nation's largest prisoner extradition company and one of the largest international transporters of detainees and transports over 100,000 detainees per year. ¶¶ 3, 28.[3] Moreover, Defendants admit they perform approximately 12,000 ground transports a year. Ex. A at p.6, Response No. 4. Finally, the evidence produced to date demonstrates the Class consists of at least 866 members with a 95% confidence interval of 740 and 1032. In fact, Plaintiff has identified 53 class members, itself enough to satisfy numerosity. *See* Declarations of Jessica Krebs and Professor Edward Cheng.[4]

Therefore, the sheer number of class members alone is more than sufficient to meet the numerosity requirement in this Circuit.  *See Afro Am. Patrolmen's League v. Duck,* 503 F.2d 294, 298 (6th Cir. 1974) (class of 17 identifiable members and no more than 35 sufficient); *Smith v. General Motors Corp.*, 14 Fair Empl.Prac.Cas. 987, 991 (E.D. Mich.1977) ("...[P]roposed classes with over thirty-five members have normally been certified ..."); *Nash v. City of Oakwood*, 94 F.R.D. 83, 88 (S.D. Ohio 1982) (class of 33 sufficient); *In re Cincinnati Rad. Lit.*, 187 F.R.D 549, 552 (S.D. Ohio 1999) (class of more than 80 sufficient); *Smith v. Magnethermic*

---

[3]     *See also* http://www.prisonertransport.net/index.php

[4]     Due to time constraints, Plaintiff's counsel was only able to review 35 of 40 pages or 7/8 of the total. If the remaining 1/8 is consistent with what has been reviewed, class membership is 1,012. This also does not include any transportees with more than one trip number.

*Corp.*, No. 4:02CV0980, 2007 WL 3355080, at *2 (N.D. Ohio Nov.7, 2007) (certifying class of 55 employees); *Priceline,* 267 F.R.D. at 529 (class of 128 members sufficient). [5]

And while the numbers alone are sufficient, there are other factors that support the impracticability of joinder. Specifically, the vast majorities of class members are economically disadvantaged and have individual claims that are relatively small compared to costs of individually litigating their own action. They are geographically dispersed throughout the United States further making joinder impracticable. *See, e.g., Wilson v. Gordon*, 3-14-1492, 2014 WL 4347585, at *2 (M.D. Tenn. Sept. 2, 2014) ("The Court finds that, given . . . the geographic scope of the potential class, and the likely inability of the economically disadvantaged potential class members to bring individual lawsuits, the element of numerosity is met in this case"); *Kerns v. Caterpillar*, Inc., No. 06-01113, 2007 WL 2044092, at *3 (M.D. Tenn. July 12, 2007) ("Apart from class size, factors that courts should consider in determining whether joinder is impracticable include the geographical dispersion of class members . . . and the relatively small size of individual claims.).

Thus, it cannot seriously be disputed that the Class is sufficiently numerous to satisfy Rule 23(a)(1).

### 2. There Are Common Questions of Law and Fact

Rule 23(a)(2) requires that there be "questions of law *or* fact common to the Class." The "commonality" provision of Rule 23(a)(2) does not require that all the questions of law or fact be common to the class. *Craft v. Vanderbilt*, 174 F.R.D. 396, 402 (M.D. Tenn. 1996). On the contrary, the Sixth Circuit has characterized the commonality test as "qualitative rather than

---

[5]     *See also Kizer v. Summit Partners, L.P.*, 1:11-CV-38, 2012 WL 1598066, at *4 (E.D. Tenn. May 7, 2012) (class of 93 members sufficient); *Campbell v. Hope Cmty. Credit Union,* 10-2649-STA, 2012 WL 2395180, at *3 (W.D. Tenn. June 25, 2012) (numerosity met where "class members could be as few as one hundred . . .").

quantitative" and made clear that the provision requires that only **one** question of law **or** fact be common to the Class in order to satisfy the Rule. *Am. Med.*, 75 F.3d at 1080. *See also Ham v. Swift Transp. Co., Inc.*, 275 F.R.D. 475, 484 (W.D. Tenn. 2011) ("Even one common question will suffice to establish this 'commonality' requirement."); *Wilson,* 2014 WL 4347585, at *3 (finding commonality met where "at a minimum" one common question existed); *Kerns*, 2007 WL 2044092, at *4 (noting that "'[v]ariations in the circumstances of class members are acceptable, as long as they have at least one issue in common.'").

As a result, the mere fact that there are factual differences among the claims of the putative class members does not defeat certification. Instead, where, as here, "the commonality requirement will be satisfied as long as the members of the class have allegedly been affected by a general policy of the Defendant and the general policy is the focus of the litigation." *Bovee v. Coopers & Lybrand*, 216 F.R.D. 596, 608 (S.D. Ohio 2003); *Day v. NLO, Inc.*, 144 F.R.D. 330, 333 (S.D. Ohio 1992) (same); *Spurlock v. Fox*, 3:09-CV-00756, 2012 WL 1461361, at *5 (M.D. Tenn. Apr. 27, 2012) (M.D. Tenn. April 27, 2012) (commonality met where "case involves allegations of the same conduct toward all the class members.").

Said another way, the class representatives must enumerate questions of law or fact common to the class, "the resolution of which will advance the litigation." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998). The mere fact that questions peculiar to individual class members could remain does not necessarily defeat a finding of commonality. *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988). Consequently, so long as there is a single question that is "meaningful and significant for the litigation" the commonality requirements will be satisfied. *Ham*, 275 F.R.D. at 484.

13

Here, there are numerous questions of both law and fact common to the class. These common questions include, but are not limited to:

> (a)     whether transporting inmates in vehicles, restrained with handcuffs, leg irons, and waist chains for more than 48 continuous hours violates the Fourth, Eighth, and Fourteenth Amendments;

> (b)     whether depriving inmates of movement free of restraints for more than 48 continuous hours violates the Fourth, Eighth, and Fourteenth Amendments;

> (c)     whether Defendants maintain a general policy, practice and custom which serves no legitimate penological justification;

> (d)     whether failing to have Plaintiff's restraints checked by a trained medical professional for more than 48 continuous hours violates the Fourth, Eighth, and Fourteenth Amendments; and

> (e)     whether a combination of these conditions imposed for more than 48 continuous hours violates the Fourth, Eighth, and Fourteenth Amendments.

¶¶ 29(a)-(e).

These numerous questions, all common to the Class, plainly satisfy the commonality requirement. *See, e.g. Christy,* 2013 WL 6858008, at *3 ("Because the resolution of these issues will resolve issues central to the validity of the proposed class's . . . claim 'in one stroke,' [the plaintiff] has established the commonality requirement of Rule 23(a)(2).").

### 3.     Plaintiff's Claims Are Typical of the Class

The "typicality" prerequisite of Rule 23(a)(3) requires that "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  The Sixth Circuit has summarized the test thusly:  "as goes the claim of the named

14

plaintiff, so go the claims of the class." *Sprague*, 133 F.3d at 399. "As with the commonality requirement, the typicality requirement is '*not demanding*.'" *Picard Chem., Inc. Profit Sharing Plan v. Perrigo Co.*, 1:95-CV-141, 1996 WL 739170, at *4 (W.D. Mich. Sept. 27, 1996); *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Chrysler LLC*, 07-CV-14310, 2008 WL 2980046, at *18 (E.D. Mich. July 31, 2008) ("As with commonality, the typicality requirement is not an onerous one . . .").

The plaintiff's claims are typical if they arise out of the same event, practice, or course of conduct that gives rise to the claims of other class members and the claims are based on the same legal theory. *Am. Med.,* 75 F.3d at 1082; *HCA*, 2014 WL 4716231, at *10 (same); *Christy*, 2013 WL 6858008, at *3 (Plaintiff's "claims and defenses are typical of the class's because they are based on the same alleged course of conduct and legal theory . . ."); *Leonard v. Southtec, LLC,* 3:04-0072, 2005 WL 2177013, at *9 (M.D. Tenn. Sept. 8, 2005) ("To show typicality, Plaintiffs must demonstrate that their claims and the claims of the class are based on the same course of conduct and legal theories."). To be typical, the named plaintiff's claims need not always do so, provided there is a common element of fact or law. *Id.; Senter*, 532 F.2d at 525 n.31; *see also Bradberry v. John Hancock Mut. Life Ins. Co.*, 217 F.R.D. 408, 413 (W.D. Tenn. 2003) (A plaintiff's "claims are not required to be identical to the claims of the putative class to meet the typicality prong."); *Christy*, 2013 WL 6858008, at *3 ("'[A] representative's claim need not always involve the same facts or law, provided there is a common element of fact or law.'").

The purpose of this requirement is to ensure that the named plaintiff's interests in the litigation are aligned with the represented group (the Class), and in pursuing its own claims, the named plaintiff will also advance the interest of the class members. *See Am. Med.*, 75 F.3d at 1082; *Kerns*, 2007 WL 2044092, at *5 (describing typicality inquiry: "typicality determines

15

whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, such that the court may properly attribute a collective nature to the challenged conduct"); *In re Accredo Health Inc., Sec. Litig.*, No. 03-2216 DP, 2006 WL 1716910, at *3 (W.D. Tenn. April 19, 2006) (finding lead plaintiffs typical because they are not "subject to unique defenses that will 'usurp a significant portion of the litigant's time and energy.'").

Here, the claims asserted by Mr. Secreti are typical of the claims of the other class members. Here, Plaintiff and the Class were damaged by the same exact conduct and same general practice, procedure and policy of the Defendant in transporting detainees and others in violation of their constitutional rights. As a result, Mr. Secreti's injuries and the injuries of the Class all arise from exactly the same course of conduct. Therefore, to obtain redress for those injuries, Plaintiff and the Class will be required to prove the same set of facts and circumstances. The typicality requirement is clearly satisfied by the need of Plaintiff and the Class to put forward the same proof to seek redress from the Defendants as a result of their general policy and practice in transporting detainees and others. *Am. Med*, 75 F.3d at 1082 (plaintiff's claim is typical if it arises from same course of conduct that gives rise to the claims of other class members); *City of Goodlettsville*, 267 F.R.D. at 530 ("Because the resolution of the common questions will determine the outcome of both the City's and the absent class members' claims, the City has satisfied the typicality requirement."); *Wilson*, 2014 WL 4347585, at *3 ("The Court finds that Plaintiffs' claims arise from the same practice and course of conduct that give rise to the claims of other potential class members and are, therefore, typical of the other purported class members as to that policy or practice."). The typicality requirement is satisfied in this case.

### 4. Plaintiff Will Fairly and Adequately Protect the Interest of the Class

The final prerequisite under Rule 23(a), that Plaintiff will fairly and adequately represent the Class, is also satisfied here. Courts, including the Sixth Circuit, generally apply two criteria to determine whether a plaintiff will adequately represent the class under Rule 23(a)(4): (1) whether the plaintiff has common interests with the unnamed class members, and (2) whether it appears that the plaintiff will vigorously pursue the interests of the class through qualified class counsel. *Senter*, 532 F.2d at 525; *HCA*, 3:11-01033, 2014 WL 4716231, at *10.

Thus, to satisfy the "adequacy" requirement, the Court must be satisfied that there are no antagonisms between the proposed class representatives and the class, and that class counsel is sufficiently experienced and capable to adequately prosecute the case. *Cross v. National Trust Life Ins. Co.*, 553 F.2d 1026, 1031 (6th Cir. 1977). As set forth below, Plaintiff does not have any interests that are antagonistic to the interests of the Class, and Plaintiff's counsel has extensive experience in prosecuting class actions such as this one.

### a. Plaintiff Has Common Interests with the Unnamed Class Members

To satisfy the first part of the adequacy test, a plaintiff need not have interests identical to the class. *Rosiles-Perez v. Superior Forestry Serv., Inc.*, 250 F.R.D. 332, 342 (M.D. Tenn. 2008) ("Absolute identity of claims among class members . . . is not required . . ."); *Winnet v. Caterpillar, Inc.*, No. 3:06-cv-00235, 2007 WL 2044098, at *8 (M.D. Tenn. July 12, 2007) (finding representatives have common interests where defendant fails to establish antagonism or conflict between the representative and the class); *In re UnumProvident Corp. ERISA Benefits Denial Actions,* 245 F.R.D. 317, 326 (E.D. Tenn. 2007) (holding representative's request for atypical relief does not establish inadequacy).

It is enough that plaintiff and the class share common objectives and are united in the relief they seek. *Chrysler LLC*, 2008 WL 2980046, at *19 ("factual variations among class members do not defeat adequacy where they are united in seeking relief on behalf of the class"). Here, Plaintiff, like all other class members, was damaged by the same conduct of Defendants through their general policy, practice and procedure in transporting detainees, prisoners and inmates.

Therefore, in order to obtain relief for himself, Plaintiff will in the process necessarily establish Defendants' liability to all of the other Class members. *See Senter*, 532 F.2d at 525 (plaintiff will adequately represent class where interests are coextensive with those of the class on all issues which relate to the class) and *Craft*, 174 F.R.D. at 406 ("class representatives share common interests with the remaining unnamed class members in attempting to prove that Defendant's conduct resulted in their damages"). Thus, Plaintiff has common interests with the unnamed Class members.

> **b.  Plaintiffs Will Vigorously Pursue the Interests
> of the Class through Experienced Class Counsel**

The second element of the "adequacy" prerequisite under Rule 23(a)(4) is also satisfied here. Plaintiff has retained counsel who is highly experienced in complex class action litigation such as this case, and are therefore well qualified to prosecute this action. *See Am. Med.*, 75 F.3d at 1083 (Rule 23(a)(4) tests experience and ability of plaintiff's counsel); *see also* Exhibit A (firm resume of Barrett Johnston Martin & Garrison, LLC.). As this Court has specifically noted "Barrett Johnston has been appointed lead or class counsel in numerous complex class actions

18

across the country, including numerous cases in the Sixth Circuit and this District." *Noel*, 2012 WL 6676770, at *3.[6]

For these reasons, and for all the reasons discussed above, Plaintiff's interests are aligned with the Class, making him an adequate representative of the Class.

## B. This Action Is Maintainable as a Class Action Under Fed. R. Civ. P. 23(b)(3)

In addition to satisfying each of the four prerequisites to class certification contained in Rule 23(a), this action is maintainable as a class action under Rule 23(b)(3). Under this provision, the case should be certified as a class action if questions common to the Class predominate over questions unique to individual class members and if the proposed class action is superior to other methods for adjudicating Class members' claims. Fed. R. Civ. P. 23(b)(3).

### 1. Common Questions Predominate Over Issues Unique to Individual Class Members

The "common question" class action is designed to assure legal vindication of small individual claims, while at the same time achieving economies of time, effort and expense. *Sterling*, 855 F.2d at 1196. To advance this policy, it is not necessary that all issues in a proposed class action are common. *See Weinberg v. Insituform Technologies, Inc.,* 93-2742 G/BRO, 1995 WL 368002 (W.D. Tenn. Apr. 7, 1995) ("The predominance requirement of Rule

---

[6]     *See also, Geier v. Sundquist*, 372 F.3d 784 (6th Cir. 2004) (noting the firm has been responsible for class action settlements of historical and national significance); *Castillo v. Envoy Corp.,* 206 F.R.D. 464, 473 n.3 (M.D. Tenn. 2002) ("[C]ounsel has experience prosecuting class actions and is able to adequately represent the class"); *Craft*, 174 F.R.D. at 406 ("The qualifications of the Plaintiffs' counsel as set out in Affidavits indicate that they are qualified and experienced to conduct the proposed class action litigation. Plaintiffs' attorneys have previously handled complex class action cases"); *Wike v.Vertrue, Inc.*, 3:06-00204, 2010 WL 3719524, at *6 (M.D. Tenn. Sept. 15, 2010) (noting that Barrett Johnston and its co-counsel had "extensive experience in the handling of class actions" and that they had "vigorously pursued Plaintiff's claims, both in this Court and on appeal" and concluding "that class counsel is adequate."); *Beach v. Healthways, Inc*., 3:08-0569, 2010 WL 1408791 (M.D. Tenn. Apr. 2, 2010) (appointing firm class counsel);  *Direct Gen.*, 2006 WL 2265472 (same).

19

23(b)(3) does not mandate that every issue in the case be common to all class members, but only that there exist substantial common issues which predominate over individual issues.").  Rather, the Court need only consider whether, if the class members were forced to try their claims separately, issues common to each of those individual actions would be the predominant ones. *See Boggs v. Divested Atomic Corp.*, 141 F.R.D. 58, 67 (S.D. Ohio 1991) ("[i]f these claims were tried separately, the amount of repetition would be manifestly unjustified").  Moreover, only questions relating to Defendants' violations need to be common.  *See Iron Workers Local Union No. 17 Ins. Fund v. Phillip Morris, Inc.*, 182 F.R.D. 523, 540 (N.D. Ohio 1998) (courts must focus on liability, rather than damages, when assessing predominance); *HCA*,  2014 WL 4716231, at *7 ("'[T]he fact that a defense may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones.'").

As the Sixth Circuit has made clear, "[t]he predominance requirement is met if [the] common question is at the heart of the litigation . . .  [and] "[c]ases alleging a single course of wrongful conduct are particularly well-suited to class certification." *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007) (citing *Sterling*, 855 F.2d at 1197). *See also Christy*, 2013 WL 6858008, at *6 (predominance requirement met where the "'common question is at the heart of the litigation.'").

Moreover, as noted above in detail, this is particularly true in prisoner or arrestee cases asserting constitutional violations because courts routinely find these cases by their very nature involve a common policy or practice satisfying the predominance standard. *See, e.g., Nassau Cnty.,* 461 F.3d at 227; *Flood*, 270 F.R.D. at 421; *Tyler*, 253 F.R.D. at 11; *Blihovde*, 219 F.R.D. at 620;  *Allen*, 204 F.R.D. at 410; *Mack*, 191 F.R.D. at 24;  *Brown*, 2012 WL 4470433, at *13; *Young*, 2007 WL 1238920, at *7; *Powers*, 2005 WL 2033696, at *13.

20

That test is clearly satisfied here. Plaintiffs' claims and the Class' claims arise from exactly the exact same unlawful general policy, practice and procedure of Defendant in transporting detainees and others resulting in exactly the same constitutional violations to the entire Class. As a result, the central issues in any Class member's individual action would relate to proof of Defendants' constitutional violations.

Few, if any, other issues relating to Defendants' liability are likely to arise. As a result, there are virtually no issues that are even arguably unique to individual Class members. "[A] claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position." *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 307 (E.D. Mich. 2001). The same is true here.

The only issue that may require some level of individualized inquiry, the calculation of Class members' damages, is insufficient to prevent class certification. Because the amount of particular Class members' damages is almost always an individual issue, courts reject the notion that individual damages issues are any impediment to class certification. As the Sixth Circuit explained:

> No matter how individualized the issue of damages may be, these issues may be reserved for individual treatment with the question of liability tried as a class action. Consequently, the mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible.

*Sterling*, 855 F.2d at 1197.

This case is perfectly suited for Class treatment. Because proof of Defendants' liability will be made *entirely* by proof common to the Class and because Class members' damages can

21

be calculated easily without any difficult individual inquiries, common questions clearly predominate. *Id.*

## 2. A Class Action is Superior to Other Methods for Adjudicating This Controversy

Given the size of the proposed Class, the relatively small claims of those Class members who are geographically dispersed across the Country and the high cost of pursuing this suit, it also is clear that the proposed class action is superior to any other method available for trying this case. As discussed above, the proposed Class consists of hundreds of members and likely many more. Trying the claims together in a single action is clearly superior to forcing the Class members to try their claims separately. *See Castillo,* 206 F.R.D. at 474 ("Considering the potential class size . . . the Court finds that trying the claims of these shareholders in a single action is superior to forcing the class members to try their claims separately").

Likewise, because Class members' claims are likely to be very small in comparison to the cost of individual actions against the Defendants, adjudicating those claims together would allow Class Members to try their claims efficiently. In fact, because the costs of an individual action would likely greatly exceed any recovery the typical Class member could expect to recover, a class action is highly desirable. As the United States Supreme Court has explained:

> Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action devise.

*Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980).

Not only is the class action device the superior method for adjudicating the claims presented in the instant case, but it is the only practical method of obtaining a fair and efficient

22

disposition of these claims. *See Bovee*, 216 F.R.D. at 607 ("Given that the proposed class consists of thousands of members and that the legal claims are narrowed to whether defendants committed securities violations, a class action will be the most fair and efficient way to resolve this dispute."). The alternatives to a class action are either no recourse for hundreds of Class members, or a multiplicity of suits resulting in the inefficient administration of justice and a burden on the judicial system. *See Picard Chem.*, 1996 WL 739170, at *9 (stating "[i]f this Court does not certify this class, hundreds of small shareholders in Perrigo stock will be effectively barred from seeking legal redress of their claims."); *See also HCA*, 2014 WL 4716231, at *14 ("Given Defendants' alleged violation . . . and its impact on a large number of geographically dispersed [class members], a class action is the superior vehicle for adjudication of the claims. The alternative would be to have (potentially) thousands of individual actions, which is likely impractical for most investors, and which would risk burdening the judicial system.").

Moreover, requiring Class members to sue individually would result in an unnecessary duplication of actions and a waste of judicial resources. This is precisely "the evil that Rule 23 was designed to prevent." *Califano v. Yamaski*, 442 U.S. 682, 690 (1979) overruled on different grounds in *Real Truth About Abortion, Inc. v. FEC*, 681 F.3d 544, 551 n. 2 (4th Cir.2012). *See also Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013) ("[T]he office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the 'metho[d]' best suited to adjudication of the controversy 'fairly and efficiently.'"). Here, "the best way to serve that office is to allow this case to proceed as a class action." *HCA*, 2014 WL 4716231, at *14.

Finally, the other pertinent matters under Rule 23(b)(3)(A-D) clearly support certification. First, there is no evidence of any interest of any members of the class in individually controlling the prosecution or defense of separate actions. Fed. R. Civ. P. 23(b)(3)(A). Second, there is no other litigation concerning this controversy by or against any members of the class. Fed. R. Civ. P. 23(b)(3)(B). Third, it is highly desirable to concentrate the litigation of the claims in this action in this particular forum because, as discussed above, it is the only forum which can provide relief for the Class. Fed. R. Civ. P. 23(b)(3)(C). Finally, Plaintiff's have retained counsel highly skilled in this type of litigation and because of this and the other reasons discussed above, there are literally no difficulties likely to be encountered in the management of this class action. Fed. R. Civ. P. 23(b)(3)(D).

In the circumstances of this case, it is apparent that the proposed class action is more than the superior method to resolve this controversy. Because the costs of this suit are likely to be high, the proposed class action is likely the ***only*** method available to injured Class Members to vindicate their claims. Accordingly, the Court should certify the Class.

## C. Barrett Johnston Should Be Appointed Class Counsel

Finally, as part of the class certification, the Court must appoint class counsel. Fed. R. Civ. P. 23(g)(1). The applicable rule sets forth the following factors for the Court's mandatory consideration: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the type of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class[.] 23(g)(1)(A)(i)-(iv). Additionally, the Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]" Fed. R. Civ. P. 23(g)(1)(B).

24

These factors counsel overwhelmingly in favor of appointing Barrett Johnston class counsel. As evidenced by the pleadings filed to date, the firm has done extensive work in identifying and investigating the appropriate claims in this case. As set forth above and as reflected in their firm resume, Barrett Johnston has extensive experience in class action litigation as repeatedly recognized by this Court which has appointed the firm class counsel in numerous complex class actions. The Firm has extensive knowledge of the applicable law in cases alleging constitutional violations. Finally, the Firm has demonstrated the resources that it will commit to representing the class through its actions this far. Accordingly, Barrett Johnston should be appointed class counsel.

## V.    CONCLUSION

The proposed Class clearly satisfies all of the requirements for class certification imposed by Tenn. R. Civ. P. 23(a) and (b)(3). This class action is likely the only forum available to Plaintiff and other Class members to seek redress as a result of Defendants' conduct. Certification of the Class is the fairest and most efficient method to resolve this dispute. On these grounds, Plaintiff respectfully requests that the Court certify the proposed Class and appoint Mr. Secreti class representative and Barrett Johnston class counsel.

DATED:       December 15, 2014           Respectfully submitted,


                                          /s Douglas S. Johnston, Jr.
                                          DOUGLAS S. JOHNSTON, JR
                                          BARRETT JOHNSTON MARTIN
                                             & GARRISON, LLC
                                          Bank of America Plaza
                                          414 Union Street, Suite 900
                                          Nashville, Tennessee 37219
                                          Telephone: (615) 244-2202
                                          Facsimile: (615) 252-3798

djohnston@barrettjohnston.com

**CERTIFICATE OF SERVICE**

       I hereby certify that on this the 15th day of December, 2014, a true and correct copy of the foregoing *Memorandum In Support of Plaintiff's Motion for Class Certification* was filed electronically with the Clerk of Court using the CM/ECF system which will send notice to all counsel of record.

**R. Dale Bay**
**Claire V. Thomas**
Lewis, Thomason, King, Krieg & Waldrop, P.C. (Nashville)
424 Church Street
Suite 2500
P O Box 198615
Nashville, TN 37219
(615) 259-1366
(615) 259-1389 (fax)
cthomas@lewisking.com
dbay@lewisking.com

                      /s/ Douglas S. Johnston, Jr.
                      DOUGLAS S. JOHNSTON, JR.
                      BARRETT JOHNSTON MARTIN
                          & GARRISON, LLC