UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SAMUEL J. SECRETI, on behalf of himself and all those similarly situated, | ) ) ) |
| | ) Case No. 3:13-cv-1065 |
| Plaintiff, | ) ) Judge Campbell |
| | ) Magistrate Judge Griffin |
| v. | ) ) |
| | ) CLASS ACTION |
| PTS OF AMERICA, LLC, and DOES 1 through 100 | ) ) ) |
| Defendants. | ) ) |

**PLAINTIFF'S REPLY MEMORANDUM IN FURTHER
SUPPORT OF MOTION FOR CLASS CERTIFICATION**

## I. INTRODUCTION

In the memorandum in support of his motion for class certification, plaintiff acknowledged the "rigorous analysis" standard for class certification. However, as has been recently acknowledged by the Sixth Circuit, it is not always necessary to probe behind the pleadings before coming to rest on certification questions. *Walmart Stores, Inc. v. Dukes,* 131 S.Ct. 2541, 2551 180 LEd$_2^d$ 374. This is because sometimes there may be no disputed "factual and legal issues" that strongly influence the wisdom of class treatment. *Gooch v. Life Investors Ins. Co of Am.* 672 F$_3^d$ 402, 417 (6th Cir. 2012). *Szabo v. Bridgeport Machines, Inc.* 249 F$_3^d$ 672, 675 (7th Cir. 2001).

Here, the defendant has failed to provide the court any disputed factual or legal issues that might strongly influence the wisdom of class certification.

1

## II. THE CLASS IS EASILY ASCERTAINABLE.

### A. The proposed class is not overly broad.

The proposed class is neither overly broad nor would it require "extensive" factual inquiries.

The defendant first claims that the class must be limited to pretrial detainees because otherwise the court might have to determine if there is some legitimate penological interest in the policies Plaintiff complains of. However, Defendant fails to even suggest, much less show, what the legitimate penological interest may be in transporting prisoners in shackles for 48 hours or more without an overnight rest.

Furthermore, the sole case cited by the Defendant in support of this proposition, *Rose v. Saginaw County,* 232 F.R.D. 267 (E.D. Mich. 2005) is both factually and legally distinguishable. *Rose* did not start as a class action and was brought specifically on behalf of a group of pretrial detainees. At the time of the motion for class certification the court had already granted summary judgment for the plaintiffs holding that the subject "naked detention policy" was unconstitutional as applied to pretrial detainees. Thus the proposed class definition including more than pretrial detainees would have been strikingly different from what had been claimed by the Plaintiffs throughout the course of the litigation and would have required the court "to scuttle its previous decision and rebalance the factors it assessed" in deciding the constitutional issues. *Rose, Id*. 273. These distinctions render the argument in Rose inapplicable to the instant case.

### B. The Defendant has not shown the availability of an administrative remedy.

The defendant next claims that the exhaustion requirement of the Prison Litigation Reform Act may impact the size of the proposed class. This, too, is fatally flawed.

2

Any alleged failure to exhaust administrative remedies is an affirmative defense under the PLRA with the burden of proof falling on the Defendant. *Jones v. Bock*, 549 U.S. 199, 216, 127 S. Ct. 910, 166 LE$_{2d}$798 (2007); *Napier v. Laurel Co. Kentucky,* 636 F$_3^d$ 669, 675 (D.C. Cir. 2008). Here, the defendant has not even made the most cursory of showings that there is any administrative remedy to exhaust. The PLRA's exhaustion requirement does not apply in a case in which there is no administrative process to exhaust. *Kaemmerling v. Lappin,* 553 F$_3^d$ 669, 675 (D.C. Cir. 2008).

### C. Individualized damages will not defeat class certification.

Defendant claims that there may be certain possible differences in damages among potential class members. However, the Sixth Circuit has held that no matter how individualized the issue of damages may be, the determination of damages may be reserved for individual treatment with the question of liability tried as a class action. In re *Whirlpool Corp. Front Loading Washer Products Liability Litigation,* 722 F$_3^d$ 838, 854) (6th Cir. 2013), quoting *Sterling v. Velsicol Chem. Corp,* 855 F$_2^d$ 1188, 1197 (6th Cir. 1988). Thus any differences in damages should not alone defeat class certification.

### D. Prisoners transported for a Federal agency.

Defendant correctly notes that for the purposes of liability under 42 U.S.C. § 1983 there is no recognized claim for damages against private entities acting under color of federal law. Thus, the class cannot include prisoners being transported by Defendant on behalf of a Federal agency. However, if a prisoner was an inmate of a Federal facility, the question to be determined is whether the Defendant was acting on behalf of a State or a Federal agency. This question is easily determined as there are at least two documents for each transportee that

3

identifies the defendant's customer: the Prisoner Receipt and the Transportation Request (*see* attached Exhibits A and B filed under seal).

### E. The class can include minors and mentally incompetent or insane persons.

Defendant claims that including juveniles or those who have been adjudicated insane and/or mentally incompetent somehow creates overly individualized determinations as to whether any such claims are timely. But, this makes sense only if Plaintiff is seeking to include such persons who were transported prior to the class period thus requiring a determination of which claims may have been subject to tolling. Plaintiff is not doing so. Part of the class definition limits the class only to those "who were transported…since September 30, 2012...." This definition encompasses all timely claims and is precise, objective and easily ascertainable.

### F. There are no extensive factual inquires necessary to ascertain the class.

In this case, the determination of membership in the class is easily ascertainable by reference to objective criteria. There are three criteria:

1) whether the detainee was transported after September 30, 2012;

2) whether the detainee was transported in restraints without an overnight rest for at least 48 hours; and,

3) whether the individual was being transported on behalf of a State or local entity.

Each of these criteria is easily determinable be reference to just a few of Defendant's own documents.

As to the first, numerous documents from the Defendant will reflect the date of transport, including but not limited to the "green sheet" and the "Activities Log", sample copies of which have been filed previously (*see* Doc. Nos. 38 and 37, respectively). Furthermore, each prisoner transported by the Defendant is given a number, and those numbers are sequential. It

4

should be easy to determine the first transport number for October 1, 2013 (*see* Deposition of Ryan Whitten, page 15, line 12 – 23, attached as Exhibit C). Any prisoner with a transport number lower than that would be excluded.

Second, as pointed out in Plaintiff's brief in support of his Motion for class certification determination of whether the prisoner was transported for a least 48 continuous hours without an overnight rest is also resolved by objective criteria. Both the prisoner's "green sheet" and the activity log corresponding to the manifest or transportation number will definitively show if the prisoner is included in the class.

Finally, the "Prisoner Receipt" lists the "customer" with which the Defendant has contracted to transport the prisoner. This document will reveal whether the customer is a state or local entity, thus potentially triggering possible Section 1983 liability.

There is nothing in any of this that requires any resort to a "merits based inquiry" as argued by Defendant.

### III. THE THRESHOLD REQUIREMENTS OF FED. R. CIV. PROC. 23(a) HAVE BEEN MET.

#### A. Numerosity

The Defendant does not challenge numerosity per se; it simply reiterates its assertion that somehow the proposed class is unascertainable. Defendant does not dispute Plaintiff's evidence that he has identified 53 members of the proposed class and that, applying an appropriate statistical analysis; the class consists of 866 transportees with a 95% confidence level that the number of class members is between 740 and 1,032. Sixth Circuit case law makes it clear the numerosity prong may be satisfied with as few as 35 members. *See*, e.g. *Cross v. National Trust Life Ins. Co.,* 553 $F_2^d$ 1026, 1030 (6th Cir. 1977) ("…this court has held that a

5

class of only 35 identified members satisfied" the numerosity prong.). Thus numerosity is satisfied.

   B. **Commonality**

Here, again, the defendant has not directly challenged the Plaintiff's claims of common questions of law or fact. Rather, Defendant asserts, but does not show, that individual issues will predominate, confusing a Rule 23(b) argument with that of 23(a).

In his opening brief, Plaintiff identified five key questions that are common to all members of the proposed class:

   (a)   whether transporting inmates in vehicles, restrained with handcuffs, leg irons, and waist chains for more than 48 continuous hours violates the Fourth, Eighth, and Fourteenth Amendments;

   (b)   whether depriving inmates of movement free of restraints for more than 48 continuous hours violates the Fourth, Eighth, and Fourteenth Amendments;

   (c)   whether Defendants maintain a general policy, practice and custom which serves no legitimate penological justification;

   (d)   whether failing to have Plaintiff's restraints checked by a trained medical professional for more than 48 continuous hours violates the Fourth, Eighth, and Fourteenth Amendments; and

   (e)   whether a combination of these conditions imposed for more than 48 continuous hours violates the Fourth, Eighth, and Fourteenth Amendments.

¶¶ 29(a)-(e).

Defendant does not dispute that these questions are common to all. Thus, commonality is satisfied.

6

### C. Typicality

Defendant again falls back on its assertion that individual proofs will predominate rather than directly addressing Plaintiff's claims of typicality. But, a Plaintiff's claims are typical for the purposes of satisfying Rule 23(a) if they arise from the same event, practice, or course of conduct that gives rise to the claims of other class members and are based on the same legal theory. In re *American Medical Systems, Inc.*, 75 $F_3^d$ 1069, 1082 (6th Cir. 1996).

In fact, Defendant agrees that Plaintiff's claims are typical in that he was transported by the defendant for more than 48 continuous hours. (Defendant's Memorandum, Doc. No. 55, page 22 of page 32, PageID #332). Defendant glosses over, but does not challenge, that Plaintiff's claims are also typical because the 48 continuous hour transport also meant that he, and all other class members, were shackled for that minimum period and that such conditions constitute a violation of the Plaintiff's rights under the Fourth, Eighth and Fourteenth Amendments to the U.S. Constitution.

### D. Adequacy of Representation

The final prerequisite under Rule 23(a), that Plaintiff will fairly and adequately represent the Class, is also satisfied here. Courts, including the Sixth Circuit, generally apply two criteria to determine whether a plaintiff will adequately represent the class under Rule 23(a)(4): (1) whether the plaintiff has common interests with the unnamed class members, and (2) whether it appears that the plaintiff will vigorously pursue the interests of the class through qualified class counsel. *Senter v. General Motors Corp.,* 532 F.2d at 525; *Schuh v. HCA Holdings, Inc.*, 3:11-01033, 2014 WL 4716231, at *10.

Thus, to satisfy the "adequacy" requirement, the Court must be satisfied that there are no antagonisms between the proposed class representatives and the class, and that class counsel

is sufficiently experienced and capable to adequately prosecute the case. *Cross v. National Trust Life Ins. Co*., 553 F.2d 1026, 1031 (6th Cir. 1977). Plaintiff does not have any interests that are antagonistic to the interests of the Class and Defendant has utterly failed to raise even a single issue to suggest otherwise. Courts have recognized the disingenuous nature of such contentions coming from defendants in a class certification motion, likening it to permitting "a fox, although with a pious countenance, to take charge of the chicken house." *Eggleston v. Chi. Journeymen Plumbers' Local Union No.* 130, U.A., 657 F.2d 890, 895 (7th Cir. 1981); In re *Organogenesis Sec. Litig.,* 241 F.R.D. 397, 410-11 (D. Mass. 2007) ("Courts have recognized that defendants often seek to cast aspersions on the adequacy of class representatives and counsel while truly seeking to have no class certified at all.").

Plaintiff's counsel has extensive experience in prosecuting class actions such as this one.

Furthermore, a glance at the docket report in this case should reveal that Plaintiff and his counsel have, in fact, "vigorously pursued" prosecution of this case. (*see,* e.g. Declaration of Douglas S. Johnston, Jr. Doc. No. 35; Declaration of Jessica Krebs, Doc. No. 46).

## IV. THE REQUIREMENTS OF RULE 23(b) HAVE ALSO BEEN MET.

### A. Individual questions do not predominate and a class action is superior.

While there may well be minor variations in the experiences of transportees while in the care, custody, and control of the Defendant, such minor variations should not defeat certification. The predominant issue in this case is whether the Defendant's policy of keeping some transportees shackled and without an overnight rest for a period of at least 48 hours violates those prisoner's constitutional rights.

8

In *Schilling v. Transcor America LLC,* N.D. CA, Case No. 3:08-cv-941-SI (copy attached as Exhibit D) the trial court granted certification to a class (and a subclass) of prisoners and pretrial detainees who were transported by the Defendant in shackles for a 24 hour minimum. There, like here, the Defendant claimed that individual issues would predominate. The court rejected that assertion, holding that any individualized injuries "does not mean that the legality of policies and practices applied to all inmates cannot be litigated on a class basis." *Id*, page 16 of 19.

As to whether a class action would be a superior method of adjudication, Defendant, again, relies on its assertion that individualized inquiries predominate. Nowhere, does the Defendant dispute the Plaintiff's contention that class treatment is superior because class members would be, and are, geographically dispersed throughout the United States, that the class consists of hundreds of members and that the claims of individual members are likely to be relatively small. Furthermore, it is now abundantly clear that the Defendant's antiquated system of filing paper documents, electronically unsearchable, would present a high cost barrier to individual suits. Thus, class action treatment is superior.

## V. THE COURT SHOULD NOT DEFER DETERMINATION OF CLASS CERTIFICATION.

While the Plaintiff agrees that the court certainly has the discretion to defer a decision on class certification, the Plaintiff opposes the Defendant's assertion that it should. Defendant argues that such deferral might protect the parties from "needless and protracted litigation". Other than suggesting a reduction in discovery, Defendant does not identify exactly what needless or protracted litigation the parties may be protected from. However, generally, summary judgment is improper if the non-movant is not afforded a sufficient opportunity for discovery. *Abercrombie and Fitch Stores, Inc. v. American Eagle Outfitters, Inc.,* 280 $F_{3d}$ 619, 6274 (6[th] Cir.

9

2002). Presumably, the Defendant will want to depose the named plaintiff. And, while the Defendant has made numerous assertions in its brief, few (and perhaps none) are actually supported by any evidence. Plaintiff intends to explore these and other issues relevant to the claims and defenses raised in this case prior to any dispositive motion practice.

Thus, the court should not defer any decision on class certification.

## CONCLUSION

Plaintiff has shown that all requirements for class certification have been met. As agreed earlier, it is highly likely that the instant forum is the only one feasibly available to the hundreds of members of the potential class. Accordingly, the Plaintiff respectfully requests this court to certify this class and allow the parties to move to the next phase of this litigation.


Dated: May 11, 2015                                             Respectfully submitted,

/s/ Douglas S. Johnston, Jr.
**DOUGLAS S. JOHNSTON, JR. (No. 5782)**
BARRETT JOHNSTON MARTIN & GARRISON, LLC
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: (615) 244-2202
Facsimile: (615) 252-3798
djohnston@barrettjohnston.com

10

Case 3:13-cv-01065   Document 60   Filed 05/12/15   Page 10 of 11 PageID #: 660

## CERTIFICATE OF SERVICE

       I hereby certify that a true and exact copy of the foregoing *Plaintiff's Reply Memorandum in Further Support of Motion for Class Certification* has been served on the following via the Court's ECF filing system on May 11, 2015:

**R. Dale Bay**
**Claire V. Thomas**
Lewis, Thomason, King, Krieg & Waldrop, P.C. (Nashville)
424 Church Street
Suite 2500
P O Box 198615
Nashville, TN 37219
(615) 259-1366
(615) 259-1389 (fax)
cthomas@lewisking.com
dbay@lewisking.com

                                              /s/ Douglas S. Johnston, Jr.
                                              DOUGLAS S. JOHNSTON, JR.
                                              **BARRETT JOHNSTON**
                                                   **MARTIN & GARRISON, LLC**